USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/3/2023_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEKEEM GIBBS,

                                    Plaintiff,

-against-

ACTING COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

No. 20 Civ. 6225 (NSR) (JCM)

ORDER REVERSING REPORT AND RECOMMENDATION

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Gekeem Vance Gibbs ("Plaintiff" or "Mr. Gibbs") commenced this action on August 7, 2020 pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner"), which denied Plaintiff's application for Disability Insurance Benefits ("DIB"). (ECF No. 1.) This case was referred to Magistrate Judge Judith C. McCarthy under 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). Presently before the Court is Judge McCarthy's report and recommendation ("R&R") on (i) Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (ECF No. 16), and (ii) the Commissioner's cross-motion for judgment on the pleadings. (ECF No 21.) Therein, Judge McCarthy recommends the Court to grant the Commissioner's cross motion and deny Plaintiff's motion.

      For the following reasons, the Court REVERSES Judge McCarthy's R&R, DENIES the Commissioner's cross-motion, and GRANTS the Plaintiff's motion. The Court therefore REMANDS this case back to the Commissioner for further proceedings.

**BACKGROUND**

The Court presumes familiarity with the factual and procedural background of this case. Further details can be found in the R&R's background section, which this Court adopts. (ECF No. 24.)

Plaintiff applied for DIB on January 17, 2017, alleging a disability onset date of September 30, 2016. Plaintiff's application was initially denied on March 20, 2017, after which he requested a hearing on April 12, 2017. A hearing was held on May 1, 2019 before Administrative Law Judge ("ALJ") Mark Solomon, who subsequently issued a decision on May 24, 2019 denying Plaintiff's claim. Plaintiff's request for review by the Appeals Council was denied on June 16, 2020.

On August 7, 2020, Plaintiff commenced the instant action challenging the administrative decision of the Commissioner denying his application for DIB. (ECF No. 1.) This action was referred to Judge McCarthy on August 10, 2020. On July 1, 2021, Plaintiff moved for judgment on the pleadings, asking the Court to reverse the ALJ's decision and arguing that the ALJ erred by: (1) failing to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's mental residual functional capacity ("RFC'); and (2) failing to properly evaluate Plaintiff's subjective statements. (R&R at 23.) On September 29, 2021, the Commissioner cross-moved for judgment on the pleadings. The Commissioner had argued that the ALJ's decision should be affirmed because the ALJ's RFC finding was supported by substantial evidence given that the ALJ properly considered the medical opinions in the record as well as Plaintiff's subjective complaints. (*Id*.)

On January 5, 2022, Judge McCarthy issued the R&R recommending that the Court to grant the Commissioner's cross motion and deny Plaintiff's motion. (ECF No. 24.) Plaintiff timely

filed objections to the R&R (*see* ECF No. 25 ("Pl.'s Obj."), and the Commissioner timely filed a response to those objections. (ECF No. 27 ("Def.'s Response").)

## LEGAL STANDARDS

*<u>Standard of Review</u>*

A magistrate judge may "hear a pretrial matter dispositive of a claim or defense" if so designated by a district court. *See* Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), (3). However, "[t]o accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.") (quoting *Small v. Sec. of HHS*, 892 F.2d 15, 16 (2d Cir. 1989)); Fed. R. Civ. P. 72 advisory committee note (1983 Addition, Subdivision (b) ("When no

timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.")).

To the extent a party makes specific objections to an R&R, a district court must review those parts *de novo*. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Mate Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In *de novo* review, district courts must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdich*, No. 04-cv-5061, 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted).

Typically, "a petition [that] makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error." *Harris v. Burge*, No. 04-cv-5Q66, 2008 WL 772568, at *6 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a litigant's claims are "clearly aimed at particular findings in the magistrate's proposal" or are a means to take a "'second bite at the apple' by simply relitigating a prior argument." *Singleton v. Davis*, No. 03-cv-1446, 2007 WL 152136, at *1 (S.D.N.Y. Jan. 18, 2007) (citation omitted). However, as Plaintiff points out, there are instances where the Court should still consider a plaintiff's objections under a *de novo* review rather than for clear error even though a plaintiff previously raised the same arguments before the Magistrate Judge, as Plaintiff does in his objections. *See Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, No. 16CIV7907JFKHBP, 2019 WL 2281375, at *6 (S.D.N.Y. May 29, 2019); *Moss v. Colvin*, 845 F.3d 516, 519 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [plaintiff] to raise ... arguments [on that point] [was] to reiterate them.'"); *Watson v. Geithner*, No. 11 Civ. 9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. 2014) (while "courts in this district often state that clear error review is

4

... appropriate if a party's objection 'simply reiterates [the party's] original arguments' ... support for that doctrine is arguably lacking in the language of both 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2)."). Accordingly, the Court will apply *de novo* review where the Plaintiff provided objections.

### *Disability Benefits*

To be eligible to receive DIB, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). To be deemed disabled with the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof and must demonstrate his or her disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C.A. § 423 (d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983). A claimant's subjective complaints of pain without more, is insufficient to meet the requisite showing. 42 U.S.C.A. § 423 (d)(5)(A).

When evaluating a claim of disability, the ALJ is required to undertake a five-step analysis set out in the regulations governing the administration of Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the second step requires the ALJ to consider whether the claimant has a "severe impairment" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the

claimant does suffer such an impairment, the third step requires the ALJ to determine whether this impairment meets or equals one on the List of Impairments. *Id*. If the claimant's impairment meets or equals one of those listed, the claimant is presumed to be disabled "without considering the [claimant's] age, education, and work experience." *Id.* At the fourth step, the ALJ must consider the claimant's RFC and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If it is determined that the claimant can still perform relevant work, he or she will be found not to be disabled (see paragraphs (f) and (h) of this section and § 404.1560(b)). *Id.* Lastly, if claimant is disabled, the ALJ must determine whether he or she is capable of performing any other work. 20 C.F.R. § 404.152(a)(4)(v). With respect to the last step, the burden shifts to the Commissioner. *Id.; see Brault v. Social Sec. Admin, 683 F. 3d* 443, 445 (2d Cir. 2012).

In addition, when reviewing an appeal from a denial of disability benefits, the Court's review is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 42 U.S.C. § 405(g). Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault,* 683 F.3d at 448. The Court does not substitute its judgment for the agency's "or determine *de novo* whether [the claimant] is disabled." *Cage v. Comm'r of Soc. Sec.*,

692 F.3d 118, 122 (2d Cir. 2012) (alteration in original) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)).

However, where the proper legal standards have not been applied, "[f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

## DISCUSSION

Plaintiff requests that the Court not adopt the R&R, and raises the following two objections to the R&R: (i) the finding that the ALJ properly weighed the medical opinion evidence and properly determined Mr. Gibbs' mental residual functional capacity and (ii) the finding that the ALJ appropriately evaluated Mr. Gibbs' subjective statements. (Pl.'s Obj. at 2.) The Commissioner argues that "the R&R correctly concluded that the Commissioner's final decision is supported by substantial evidence and that the ALJ committed no harmful errors in reaching his conclusions." (Def.'s Response at 2.)

Because the Court finds that the ALJ failed to properly give good reasons for giving little weight to the treating physician's opinions and notes, the Court remands this case back to the Commissioner for further consideration.

### I. Duty to Develop the Record

The R&R first evaluated the threshold question regarding whether the ALJ met his duty to develop the record, and found that he did. (*See* R&R at 25.) *See Smoker v. Saul*, No. 19-CV-1539(AT)(JLC), 2020 WL 2212404, at *9 (S.D.N.Y. May 7, 2020) ("Whether the ALJ has

satisfied this duty to develop the record is a threshold question."). Neither of the parties contested this finding, the Court reviews this issue for clear error.

The Court finds no clear error in the R&R's finding that there are no obvious gaps in the record to allow the ALJ to adequately evaluate the Plaintiff's abilities and impairment-related limitations, given that the ALJ had two examinations, one state agency medical consultant opinion, and numerous medical records and treatment notes. (*See* R&R at 26.) *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d. Cir. 1996)). Therefore, the Court affirms the R&R's finding that the ALJ met his duty to develop the record.

## II.     Weighing of Medical Opinion Evidence

Plaintiff objects to the R&R's finding that the ALJ properly weighed the medical opinion evidence and that the ALJ properly determined Plaintiff's RFC. (Pl.'s Ob. at 1.)   Specifically, Plaintiff argues that: (i) the ALJ should have given controlling rather than little weight to the opinions of Dr. Squitieri, Plaintiff's treating physician, who identified numerous work-related limitations (ECF No. 13 ("Social Security Administration Record" or "SSR") at 459–63; 466–70); (ii) the ALJ unduly discounted the opinions of consultative examining psychologist, Dr. Nikkah, who found Plaintiff to be moderately limited in several work-related areas (SSR at 408–09); and (iii) improperly credited the opinions of non-examining state agency psychologist, Dr. Bhutwala, who found no evidence of limitation in his ability to remember locations and work-like procedures or in his ability to understand and remember very short and simple instructions, and no significant

8

limitation in his ability to understand and remember detailed instructions (SSR at 94).  (*See* Pl.'s Obj. at 2–13.)

The Commissioner, on the other hand, argues that substantial evidence supports the findings because the ALJ properly considered the medical opinions in the record, gave good reasons for according little weight to Dr. Squitieri's opinion and relying more heavily on Dr. Bhutwala's opinion, as well as contends that the ALJ did not improperly discount Dr. Nikkah's opinion.  (Def.'s Response at 2–3.)  For the reasons discussed below, the Court reverses the R&R's finding that the ALJ properly weighed the medical opinion evidence, as the Court finds that the ALJ failed to give good reason for giving Dr. Squitieri's opinion little weight.  The Court therefore remands back to the Commissioner for further proceedings.

***Weighing of Dr. Squitieri's opinion***

Plaintiff first argues that the opinions of Dr. Squitieri, the treating physician, should have been given controlling weight and that the ALJ did not give good reasons for rebutting the presumption of controlling weight as required.  (Pl.'s Obj. at 9.)  For the reasons articulated below, the Court agrees that the ALJ failed to give good reasons for giving Dr. Squitieri's opinions little weight, and therefore remands this case for further consideration.

For claims filed before March 27, 2017, like Plaintiff's claim, the ALJ must give the medical opinion of a treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence."  *Rosa*, 168 F.3d at 78–79.[1]  However, an ALJ may properly disregard the opinion of a treating physician where the opinion is contradicted by the weight of other record evidence, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.

---

[1] As correctly noted in the R&R, the treating physician rule applies to claims filed before March 27, 2017. *Quiles v. Saul*, No. 19-CV-11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).  Plaintiff filed his claim on January 17, 2017, (R. 189–90), so the treating physician rule applies here.  (*See* R&R 28 n.2.)

1999), or if it is internally inconsistent or otherwise uninformative, *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order) ("A physician's opinions are given less weight when his opinions are internally inconsistent."). The ALJ must provide "good reasons" for affording a treating physician's opinion limited weight. *Schaal*, 134 F.3d at 505; *see also* 20 C.F.R. § 404.1527(c)(2). In addition, the ALJ must consider the following factors [the "*Burgess* factors"] when determining what weight to give a treating physician's opinion: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 418) (per curium) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id*. at 96. Where an ALJ procedurally errs, "the question becomes whether a searching review of the record . . . assure[s] [the court] . . . that the substance of the treating physician rule was not traversed." *Id*. (quoting Halloran, 362 F.3d at 32) (internal quotations omitted).

The ALJ gave Dr. Squitieri's opinions "little weight" because he opined that they were not supported by the record. (SSR at 27.) The ALJ acknowledged that Dr. Squitieri is a treating source. (*Id*.) However, he determined that Dr. Squitieri's opinions should not be given controlling weight because his July 2018 and October 2018 Psychiatric and Psychological Impairment Questionnaires (SSR at 459–63; 466–70), which noted that Plaintiff has multiple marked limitations and that he is likely to miss work more than three times per month, purport to reflect Plaintiff's limitations as of 2001 and 2016 even though Dr. Squitieri began treating Plaintiff as of November 2017. (*See* SSR at 27.) The ALJ also gave Dr. Squitieri's opinions little weight because

10

he found that his opinions were not supported as there was no evidence of decompensation since Plaintiff's last hospitalization in 2016, no indication of any problems with keeping a schedule, and no support for marked limitations in any activities. (*Id*.)

The Court agrees with Plaintiff that the ALJ failed to consider the longitudinal nature of Plaintiff's treatment. *See Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 247 (E.D.N.Y. 2020). The ALJ fails to grapple with the fact that Dr. Squitieri's opinions and notes delve into Plaintiff's conditions in 2018 and 2019, whereas the other records only go as far as 2017. (*See* SSR at 417, 430, 459–63; 466–70; 625, 614, 616, 618, 621.) The ALJ does not indicate, nor does the Court find, notes from other physicians or other medical documentation regarding Plaintiff's conditions in 2018 and 2019. On one hand, the R&R points to numerous materials in the record showing that Plaintiff has normal or stable affect; normal psychomotor activity and speech; good, stable or even mood; intact memory; full orientation; intact cognition; and no recent hallucinations or psychotic symptoms. (SSR 24–26; *see, e.g.* SSR. 440, 444, 485, 490, 495, 500, 505, 509, 539). The R&R also cites to the record showing that Plaintiff consistently had good engagement, was well-groomed, had good eye contact, and had calm and cooperative behavior (SSR. 477, 484–85,490, 495, 500, 505, 509). However, the Court's review of these records reveals that they are from 2016 and 2017, and none are from 2018 to 2019.

Therefore, the ALJ's determination that Dr. Squitieri's opinions, particularly the 2018 to 2019 records, are contradicted by the record is not supported by substantial evidence, and thus, the Court finds that the ALJ failed to give good reason to give Dr. Squitieri's opinion little weight despite being a treating source. Notably, the ALJ does discuss Plaintiff's symptoms described in 2018 Community Healthcare Network notes—many of these notes were by Dr. Squitieri, and it is unclear whether the ALJ acknowledges this fact. (*See* SSR at 25.) While the ALJ correctly points

11

out that certain of these notes indicate that Plaintiff's bipolar symptoms are controlled and even appear normal at times, *inter alia*, the record also shows that these symptoms fluctuate. *See Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (indicating that courts should reconcile or grapple with claimant's fluctuating state of mind when determining claimant's ability to work); *see also* Pl.s' Obj. at 3 ("The treating psychiatrist specified that his opinions were based on findings of a depressed mood, persistent or generalized anxiety, a constricted affect, feelings of guilt or worthlessness, hostility or irritability, difficulty thinking or concentrating, easy distractibility, anhedonia/pervasive loss of interests, decreased energy, flight of ideas, impulsive or damaging behavior, pressured speech, and fluctuating sleep patterns.") (citing to SSR at 460, 463, 467, 470.) On remand, the ALJ should reconsider these notes in tandem with Dr. Squitieri's July 2018 and October 2018 Psychiatric and Psychological Impairment Questionnaires (SSR at 459–63; 466–70), which indicate that Plaintiff has multiple marked limitations, when determining whether Dr. Squitieri's opinion should be given controlling weight on remand.[2]

Plaintiff also objects to the R&R's determination that substantial evidence supports the ALJ's finding that there is no indication of any problems with keeping Plaintiff schedule, and therefore that support the ALJ's finding that Dr. Squitieri's opinion about Plaintiff missing workdays monthly is highly speculative and unsupported. (R&R at 31; SSR 27.) The Court acknowledges, as the R&R does, that there is conflicting evidence on whether Plaintiff has limitations with keeping a schedule. (*See* SSR 62–63, 269, 401, 611–12 (showing that Plaintiff missed several doctor's and therapy appointments); *but see SSR* 428, 430, 432, 614, 616, 618

---

[2] As Plaintiff persuasively argues, the ALJ should keep in mind that just because symptoms are "stable" does not necessarily mean that Plaintiff is not disabled and is able to work. *See Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008) (finding "hopeful remarks" in clinic notes that claimant was doing "fairly well" or "quite well" are insufficient to undermine a finding of psychiatric disability); *Gude v. Sullivan*, 956 F.2d 791, 793 (8th Cir. 1992) (describing a claimant as "'in remission' [or] 'has stabilized' does not mean that [the claimant's] symptoms have gone away or that they do not exist").

(treatment notes indicating Plaintiff kept appointments during the relevant period). Because the ALJ's reconsideration regarding the weight given to Dr. Squitieri's opinion may influence his determination on this point, the Court will refrain from opining on this issue.

Plaintiff also raises the objection that the ALJ failed to properly consider all of the *Burgess* factors when deciding not to give greater weight to Dr. Squitieri's opinion, which he argues was not harmless error. (Pl.'s Obj. at 10). Because the Court remands this case for further consideration, the ALJ is directed to consider all of the *Burgess* factors when deciding what weight should be given to Dr. Squitieri's opinion.

***Weighing of Dr. Nikkah's opinion***

Plaintiff argues that the ALJ improperly gave partial weight to the opinions from the Agency's examining psychologist, Dr. Nikkah by rejecting the disabling mental limitations described by this source and by giving undue weight on Mr. Gibbs' activities of daily living to discount Dr. Nikkah's opinions indicating that Plaintiff is disabled. (Pl.'s Obj at 10–11.)

From the outset, the Court notes that the ALJ has the discretion to give Dr. Nikkah's opinion partial weight based on the fact that Dr. Nikkah only provided a one-time examination. (See SSR at 26.) "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam*, 508 F. App'x at 89. *See Burnette v. Colvin*, 564 F. App'x 605, 608 (2d Cir. 2014) (summary order) (indicating that the ALJ has discretion to weigh the opinion of a consultative examiner and attribute to it appropriate weight based on his or her review of the entire record); *Torbicki v. Berryhill*, 17-CV-386(MAT), 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018).

However, the Court agrees that the ALJ appears to have placed undue weight on Plaintiff's daily living activities—including the fact that he is able to bathe, groom, and dress himself as well

13

as clean, do laundry, and go shopping— in order to discount Dr. Nikkah's finding that Plaintiff has some moderate limitations that could support a finding of severe mental medically determinable impairment. (*See* SSR at 26.) "[I]t is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Mahon v. Colvin*, No. 15-CV-02641 (PKC), 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017); (internal citations and quotations omitted). *Brown v. Comm'r*, 06-CV-3174, 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) (stating that the "excessive weight [the ALJ gave] to [the plaintiff's] performance of basic daily activities was a "legal error" and noting that "even to the extent that [the plaintiff's] daily activities were properly considered, the ALJ failed to place the burden on the Commissioner to show that those activities were evidence of [RFC] to perform full-time ... work"); *see also Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) (noting that for a person who suffers from an affective or personality disorder marked by anxiety, "the work environment is completely different from home", and that a doctor's observations that the plaintiff was "stable and well controlled with medication" did not "support the medical conclusion that [the plaintiff could] return to work").

Therefore, on remand, the ALJ should reconsider the weight it provides to Dr. Nikkah's opinion without giving undue weight to Plaintiff's daily activities. This is particularly important that for a person who suffers from bipolar or related personality disorders, "the work environment is completely different from home or a mental health clinic." *Skibitcky v. Saul*, No. 3:19-CV-

00801 (WIG), 2020 WL 1227346, at *10 (D. Conn. Mar. 13, 2020) (citing Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000)).

***Weighing of Dr. Bhutwala's opinion***

Plaintiff argues that the ALJ erred by giving partial weight to the opinions of Dr. Bhutwala, a non-examining consultant, because he only reviewed Plaintiff's records through February 2017 and not the full record. (Pl.'s Obj. at 13.) The ALJ considered Dr. Bhutwala's opinion in finding that the treatment records "indicate only some history of anger and irritability issues and supports moderate limitations in interacting with others . . . ." (SSR at 26.). Because the Court directs the Commissioner to reconsider the weight given to the treating physician, Dr. Squitieri, the Court will not opine on what weight should have been provided to Dr. Bhutwala's opinion, given that the Commissioner's re-evaluation of Dr. Squitieri's opinion may influence how it weighs Dr. Bhutwala's opinion. *See, e.g., Rodriguez v. Astrue*, No. 07CV534(WHP)(MHD), 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009) (In the context of a claimant's application for SSI based on a mental disability, the findings of the non-examining physician "should have been discounted or addressed with some skepticism because they were largely inconsistent with the examining physician's findings . . . .") (citation and internal quotation marks omitted).

***Objections to Mental RFC Determination***

Plaintiff objects to the ALJ's finding that Plaintiff was mentally limited to unskilled jobs with no more than occasional close interpersonal contact with supervisors and co-workers and no close interpersonal contact with the general public. (Pl.'s Ob. at 14.) Plaintiff argues that the ALJ failed to appropriately cite to medical evidence supporting the RFC determination, particularly as the ALJ rejected the treating physician's opinion and gave Dr. Nikkah and Dr. Bhutwala's opinions only partial weight. (*Id*.) Again, because the Court directs the Commissioner to reevaluate the

weight given to the treating physician's opinion, the Court will refrain from ruling on the RFC determination issue at this time.

### III. Evaluating Plaintiff's Subjective Statements

Plaintiff argues that the R&R erred by affirming the ALJ's finding that Plaintiff's statements about the nature and severity of his impairments were not supported by the record. (Pl.'s Obj. at 16 (citing R&R at 38–40).) The Court will refrain from opining on this issue given that the ALJ's reconsideration of the weight given to Dr. Squitieri's opinion may affect how the ALJ comes out on this issue.

"An ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018) (quoting *Barry v. Colvin*, 606 F. App.'x 621, 622 (2d Cir. 2015)). In addition, the Commissioner will "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [his or her] symptoms affect [him or her]." 20 C.F.R. §§ 404.1529(a). However, the Commissioner "will not reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [his or her] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. §§ 404.1529(c)(2). Finally, Social Security Ruling 16-3p directs the ALJ to consider (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

While the Court refrains from deciding on this issue, it is worth pointing out and addressing two issues raised by the Plaintiff.

First, Plaintiff argues that the ALJ erred by finding a lack of records documenting periods of psychotic symptoms such as hallucinations and paranoia. (Pl.'s Obj. at 16.) Plaintiff adds that in any event, there is no requirement that an individual be psychotic, suicidal, and/or homicidal to be found mentally disabled. (Pl.'s Obj. at 17.) The Court notes that the ALJ did indeed consider the documentation regarding Plaintiff's psychotic symptoms, and substantial evidence supported the finding that Plaintiff consistently denied hallucinations after his 2016 hospitalization and that his symptoms improved with medication and therapy. (R&R at 38–39.) *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 762-63 (S.D.N.Y. 2018) (the ALJ has discretion to weigh the consistency of the claimant's allegations and is not required to accept them without question); *see also Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard.") (*citing Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam)).

Plaintiff also argues that the ALJ erred by considering the fact that Plaintiff stopped working as of August 2016 due to fire at his workplace, and states that regardless of the reasons for him no longer working, he should receive disability benefits because of his psychiatric symptoms. (Plaintiff's Obj. at 17.) However, the Court agrees with the Commissioner that "the ALJ did not suggest that the workplace fire was the only reason for Plaintiff's ongoing lack of

17

employment, as Judge McCarthy observed." (Def.'s Response at 8 (citing R&R at 39–40.) As the Commissioner indicates, the workplace fire was just one factor considered regarding Plaintiff's current lack of employment, and the ALJ did indeed consider his symptoms and treatment history when considering his capacity to perform work. (*Id.*) *See* Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *7 (S.S.A. March 16, 2016) (permitting consideration of "[a]ny other factors").

## CONCLUSION

For the foregoing reasons, the Court REVERSES Judge McCarthy's R&R, DENIES the Commissioner's cross-motion, and GRANTS the Plaintiff's motion. The Court therefore REMANDS this case back to the Commissioner for further proceedings.

The Court kindly directs the Clerk of Court to terminate the motions at ECF Nos. 16 and 21.

Dated: January 3, 2023
       White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE